Michael C. DUFFEY, Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD (TROLA-DYNE, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 27, 2015.

Decided June 26, 2015.

---

Drew P. Gannon, York, for petitioner.

Thomas F. Miller, Mt. Laurel, NJ, for respondent.

BEFORE: RENÉE COHN JUBELIRER, Judge, and MARY HANNAH LEAVITT, Judge, and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Judge RENÉE COHN JUBELIRER.

Michael C. Duffey (Claimant) petitions for review of the Order of the Workers' Compensation Appeal Board (Board) reversing a Workers' Compensation Judge's (WCJ) Decision that the Impairment Rating Evaluation (IRE) submitted by Trola–Dyne, Inc. (Employer) was invalid because it did not address mental injuries which the WCJ newly added to Claimant's Notice of Compensation Payable (NCP). On appeal, Claimant argues that the Board erred in modifying his disability status from total to partial based on an IRE that did not consider all of Claimant's work-related injuries. We affirm.

## I. Background

The facts in this matter are not in dispute. On March 6, 2009, Claimant sustained work-related injuries to both hands when "[h]e picked up hot wires that someone [had] reconnected by accident" while repairing a machine for Employer. (WCJ Decision, Findings of Fact (FOF) ¶¶ 1, 21.) Employer issued the NCP describing Claimant's injury as "bilateral hands, electrical burn, stripping some electric wire." (NCP, R.R. at 1a.)

On March 6, 2011, Claimant reached 104 weeks of receiving total disability compensation. Employer requested an IRE pursuant to Section 306(a.2)(1) of the Workers' Compensation Act[1] (Act) on March 17, 2011. (FOF ¶ 2; Request for Designation of a Physician to Perform an IRE (Request for Designation), R.R. at 2a–3a.) In its IRE request, Employer described Claimant's work injury as "bilateral hands-nerve and joint pain." (Request for Designation at 1, R.R. at 2a.) Claimant submitted to an IRE with Bruce E. Sicilia, M.D., on June 2, 2011. (FOF ¶¶ 3–4.) Dr. Sicilia issued an Impairment Rating Determination Face Sheet, with accompanying report, on June 25, 2011 indicating that Claimant had a six percent impairment rating. (FOF ¶ 4.) Based on Dr. Sicilia's rating, Employer issued a Notice of Change of Workers' Compensation Disability Status Form on June 28, 2011, informing Claimant of his impairment rating and changing Claimant's disability status from total to partial. (FOF ¶ 5.) This change in disability status from total to partial does not reduce Claimant's benefit amount, but limits the receipt of benefits to five hundred weeks. *Diehl v. Workers' Compensation Appeal Board (IA Construction)*, 972 A.2d 100, 104–05 (Pa.

---

1. Act of June 2, 1915, P.L. 736, *as amended,* added by Section 4 of the Act of June 24, 1996, P.L. 350, 77 P.S. § 511.2(1). Section 306(a.2)(1) requires an employee, after receiving 104 weeks of total disability benefits, "to submit to a medical examination which shall be requested by the insurer within sixty days upon the expiration of the one hundred four weeks to determine the degree of impairment due to the compensable injury, if any." *Id.*

Cmwlth.2009), *aff'd,* 607 Pa. 254, 5 A.3d 230 (2010).

Claimant filed a Petition to Review Compensation Benefit Offset (Review Petition) on or about July 14, 2011 asserting that the IRE was invalid, but the Review Petition did not describe how the IRE was invalid. (FOF ¶ 6; Review Petition, R.R. at 15a–16a.) Claimant later asserted that the IRE was invalid because the description of the injury was incomplete. (FOF ¶ 7.) The Review Petition was assigned to the WCJ on July 19, 2011. (FOF ¶ 6.) Claimant testified on December 16, 2011, and the parties submitted their respective physician depositions to the WCJ at various hearings throughout 2012. (FOF ¶¶ 7–18.)

Claimant presented the deposition testimony of his family physician, Debra A. Bell, M.D., who indicated that she "diagnosed the Claimant as suffering from adjustment disorder with depressed mood" on August 18, 2010, and Dr. Bell and Scott M. Cherry, M.D., who is board-certified in neurology and internal medicine, stated that Claimant had Post–Traumatic Stress Disorder (PTSD). (FOF ¶¶ 22–23.) Employer presented the deposition testimony of Dr. Sicilia and Timothy J. Michals, M.D. Dr. Sicilia testified regarding his findings from the IRE and his imposition of a six percent whole body impairment rating for Claimant, which addressed only those injuries described as work-related in the IRE designation sheet and did not review Claimant's mental conditions. (FOF ¶ 24; Request for Designation at 1, R.R. at 2a.) Dr. Michals, a board-certified psychiatrist, forensic psychiatrist, and neurologist, acknowledged that Claimant suffered from adjustment disorder with anxiety and depressed mood, but opined that he was fully recovered therefrom and disagreed with Dr. Bell's diagnosis of PTSD. (FOF ¶ 25.)

The WCJ accepted Claimant's testimony and evidence as credible and rejected Employer's evidence to the extent it conflicted with Claimant's evidence. (FOF ¶¶ 22–27.) Accordingly, the WCJ added adjustment disorder with depressed mood and PTSD to Claimant's NCP as work-related injuries. (FOF ¶ 27; WCJ Decision, Conclusions of Law (COL) ¶ 3.) Because Claimant had established that he suffered additional work injuries, the WCJ concluded that Dr. Sicilia's IRE was invalid because it did not address Claimant's additional work-related injuries. (FOF ¶ 26; COL ¶ 2.) Therefore, the WCJ issued an order granting the Review Petition and indicating that Employer could not modify Claimant's disability status based on the IRE. (WCJ Order.)

Employer appealed to the Board arguing, in relevant part, that the WCJ erred in finding the IRE invalid.[2] The Board agreed and reversed the WCJ's determination. The Board held that the IRE was valid because

> Although Dr. Bell's notes of August 18, 2010 indicate a diagnosis of adjustment disorder with depressed mood, Claimant never sought to amend the NCP to include that diagnosis until December 16, 2011, long after the June 2, 2011 IRE. The WCJ accepted Dr. Sicilia's testimony that[,] as of the time of the IRE, Claimant was at MMI [ (maximum medical improvement) ], and his determination of a whole person impairment of 6% was not refuted by Claimant. As Dr. Sicilia properly performed the IRE, based upon the accepted injuries, the

---

2. Employer also challenged the WCJ's modification of the NCP to include the two additional injuries. The Board affirmed the WCJ's determination, but Employer did not appeal this issue to our Court.

WCJ erred in determining that the IRE was invalid.

(Board Op. at 10.) Claimant now petitions this Court for review.[3]

## II. Discussion

### a. Section 306(a.2) of the Act

Section 306(a.2) of the Act governs the manner in which an employer may obtain a change in a claimant's disability status based on an IRE, as well as how a claimant may challenge an IRE. 77 P.S. § 511.2. Subsection (1) provides:

> When an employe has received total disability compensation pursuant to clause (a) for a period of one hundred four weeks, unless otherwise agreed to, the employe shall be required to submit to a medical examination which shall be requested by the insurer within sixty days upon the expiration of the one hundred four weeks to determine the degree of impairment due to the compensable injury, if any . . . .

77 P.S. § 511.2(1). Section 306(a.2)(8)(i) defines "Impairment" as "an anatomic or functional abnormality or loss that results from the compensable injury and is reasonably presumed to be permanent." 77 P.S. § 511.2(8)(i). If the claimant is found to have an impairment equal to or greater than fifty percent, the claimant is presumed to be totally disabled and "continue[s] to receive total disability compensation benefits." 77 P.S. § 511.2(2). However, if the impairment rating is less than fifty percent, then the claimant's status changes to one of partial disability, but "no reduction shall be made until sixty days' notice of modification is given." *Id.*

A claimant has "the right to immediately appeal the reduction of his or her disability status before the reduction [becomes] effective" during the sixty-day notice period. *Johnson v. Workers' Compensation Appeal Board (Sealy Components Group)*, 982 A.2d 1253, 1257 (Pa. Cmwlth.2009). During this period, the claimant can challenge the IRE itself. *Barrett v. Workers' Compensation Appeal Board (Sunoco, Inc.)*, 987 A.2d 1280, 1288 (Pa.Cmwlth.2010). However, a claimant is not foreclosed from subsequently challenging the reduction in disability status if an appeal is not filed during the sixty-day period. *Johnson*, 982 A.2d at 1258. Section 306(a.2)(4) specifically provides that a claimant "may appeal the change to partial disability at any time during the five hundred-week period of partial disability; Provided, That there is a determination that the [claimant] meets the threshold impairment rating that is equal to or greater than fifty per centum." 77 P.S. § 511.2(4). In other words, after the sixty-day immediate appeal period has passed, but before the expiration of the five hundred week-period, a claimant may attempt to reinstate total disability status by presenting an IRE showing an impairment rating of equal to or greater than fifty percent. *Wingrove v. Workers' Compensation Appeal Board (Allegheny Energy)*, 83 A.3d 270, 276 n. 5 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 626 Pa. 680, 94 A.3d 1011 (2014); *Johnson*, 982 A.2d at 1258.

### b. The parties' arguments

On appeal, Claimant argues that, because he filed his appeal during the initial sixty-day appeal period, he could challenge the IRE as being invalid based on the fact

---

**3.** "This Court's scope of review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether errors of law were made, or whether constitutional rights were violated." *Peters Township School District v. Workers' Compensation Appeal Board (Anthony)*, 945 A.2d 805, 810 n. 8 (Pa.Cmwlth.2008).

that the description Dr. Sicilia used did not include *all* of Claimant's compensable work-related injuries, which, following the WCJ's Decision, included PTSD and adjustment disorder with depressed mood. According to Claimant, this Court envisioned this type of scenario in *Harrison v. Workers' Compensation Appeal Board (Auto Truck Transport Corporation)*, 78 A.3d 699, 704 (Pa.Cmwlth.2013), in which we acknowledged that there may be instances where the description of a work injury could become an issue during an IRE proceeding, which may result in a WCJ amending an NCP to include additional injuries.[4]

Employer responds that accepting Claimant's argument essentially would preclude an IRE from being valid because a claimant could challenge the validity of an already performed IRE based on injuries that were not yet determined to be work-related. As a practical matter, Employer asserts, an IRE physician is only able to assess a claimant for injuries that have been accepted as work-related in an NCP, the document that defines a claimant's work-related injuries; otherwise, the IRE physician is placed in the position of having to imagine what other work-related injuries a claimant could have. Employer notes that, here, Claimant had two years to add any additional injuries to his NCP, but did not seek to amend the NCP until *after* the IRE was performed. According

to Employer, countenancing Claimant's position would be contrary to this Court's decision in *Wingrove*, result in chaos in the IRE process, and frustrate the very purpose of the IRE process, which is to establish a claimant's impairment rating at a fixed moment in time.

■ We must determine whether an IRE, which addresses the injuries that were identified as compensable at the time the IRE was performed, becomes invalid if it is subsequently determined, during a claimant's challenge to the IRE filed within the sixty-day appeal period, that the claimant sustained additional work-related injuries. After reviewing the Act, the relevant precedent, and the purpose of the 1996 Amendments to the Act, which added Section 306(a.2) to the Act, we conclude that the IRE here is not invalid and may be used to modify Claimant's disability status from total to partial. Our conclusion does not foreclose claimants from challenging the change to partial disability status if additional injuries are recognized or adjudicated as being work-related.

### c. Analysis

■ The purpose of the IRE is "to determine the degree of impairment *due to the compensable injury.*" 77 P.S. § 511.2(1) (emphasis added). The Act's definitions of "impairment" as the "abnormality or loss that results *from the compensable injury*" and "impairment rating"

---

**4.** Claimant also asserts that employers exercise exclusive control over the descriptions of injuries set forth in NCPs and that claimants should be permitted, during the sixty-day appeal period, to try to amend an NCP, which would, if successful, render the IRE invalid if it did not address the newly added injury. However, as pointed out by Employer, a claimant may seek to amend the description of a work injury contained in an NCP at any time by, *inter alia*, filing a review petition. *See* Section 413(a) of the Act, 77 P.S. § 771 (providing, in pertinent part, that "A [WCJ] may, at any time, review and modify ... a [NCP] ... upon petition filed by either party ..., or in the course of the proceedings under any petition pending before such [WCJ], if it be proved that such [NCP] ... was in any material respect incorrect"). Here, Claimant was diagnosed with adjustment disorder with depressed mood on August 18, 2010, (FOF ¶ 23), well before the IRE was performed, and could have, pursuant to Section 413(a), filed a review petition seeking to add that injury to the NCP.

as "mean[ing] the percentage of permanent impairment of the whole body resulting *from the compensable* injury" and as "represent[ing] only that impairment that is the result of *the compensable* injury . . .," repeatedly focus on the *compensable* injury. 77 P.S. § 511.2(8)(i), (ii) (emphasis added). It is well-settled that it is "[t]he NCP [that] establishes the description of the work injury." *Harrison,* 78 A.3d at 703. Accordingly, "Section 306(a.2) directs the IRE physician to base his impairment opinion on the injury *described in the NCP."* *Id.* at 704 (emphasis added). Moreover, "it is the claimant's physical condition *at the time of the IRE* that governs the validity of the IRE." *Westmoreland Regional Hospital v. Workers' Compensation Appeal Board (Pickford),* 29 A.3d 120, 122 (Pa.Cmwlth.2011) (emphasis added). "The IRE produces a snapshot of the claimant's condition *at the time of the IRE,* not a survey of the claimant's work-related injuries over a period of time." *Id.* at 128 (emphasis added). Pursuant to the statutory language and the above-referenced precedent, the focus in determining the validity of an IRE is on the state of the claimant and the compensable injury, *as described in the NCP at the time the IRE is performed.* These principles support the Board's conclusion that the IRE here is valid.

Claimant maintains that this Court, in *Harrison,* envisioned the present scenario and supports his position. In that case a physician performed an IRE, considering not only the injury described as work-related in the claimant's NCP, but also several other injuries in determining the claimant's impairment rating of thirteen percent. *Harrison,* 78 A.3d at 700–01. Thereafter, the claimant filed a review petition seeking to amend the NCP to include the other injuries considered by the IRE physician, arguing that, since IREs address only "compensable injuries," the

additional injuries included by the IRE physician should now be added to the description of his work injury. *Id.* at 702–04. We rejected the claimant's arguments noting that, while Section 306(a.2) indicates that an impairment rating is to be based on a claimant's compensable injuries, "it does not state that an impairment rating based on all of a claimant's medical conditions changes the work injury." *Id.* at 704. Recognizing that under Section 413(a) of the Act, 77 P.S. § 771, a WCJ may amend an NCP during the litigation of any petition, we stated that "[i]t may be that in an IRE proceeding where the work injury description becomes an issue in the case, the WCJ could amend the NCP," but that "the WCJ is not required to do so." *Id.* Although this Court mentioned the possibility that an NCP could be amended during an IRE proceeding pursuant to Section 413(a), we gave no indication how this amendment would affect the already-performed IRE or otherwise suggested that the IRE would be rendered invalid as a result of adding new injuries to the NCP. Accordingly, we conclude that *Harrison* offers little guidance in addressing the issue presently before us.

Similarly, Employer asserts that this Court's recent decision in *Wingrove* is on point and supports the Board's conclusion; however, *Wingrove* is also distinguishable. In that case, the claimant's disability status was changed from total to partial based on an impairment rating of eleven percent issued in 2005. *Wingrove,* 83 A.3d at 272. In 2009, four years after the IRE determination, the claimant filed two review petitions seeking to modify the description of the injury in the claimant's NCP to include additional injuries and challenging the IRE because it did not take into consideration the alleged injuries the claimant sought to add to his NCP. *Id.* at 272–73. Following hearings, the WCJ

granted one of the review petitions and added several injuries to the claimant's NCP. *Id.* at 273. Regarding the validity of the IRE, however, the WCJ held "that the expansion of [the c]laimant's work injuries did not negate the validity of [the] 2005 IRE." *Id.* The Board affirmed and, on appeal to this Court, we affirmed as well. In doing so, we held that "[o]nce 60 days passed, [the IRE] became fixed and beyond challenge" and, pursuant to Section 306(a.2)(4), "the burden shifted to [the c]laimant to prove that the addition of depression to the NCP rendered him at least [fifty percent] impaired." *Id.* at 276. Because the claimant did not prove this, the claimant could not have his disability status reinstated to total disability status. *Id.* Thus, in *Wingrove*, the claimant could not attack the IRE itself because it was not filed within the sixty-day immediate appeal period. Here, by contrast, Claimant's appeal *was* filed within the sixty-day appeal period before the IRE "became fixed and beyond challenge," *id.*; therefore, he could challenge the IRE itself, *Barrett*, 987 A.2d at 1288.

■ Our conclusion that *Wingrove* is distinguishable, however, does not require us to conclude that the IRE here was invalid because it does not address the injuries that were found to be work-related *after* the IRE was performed. During the initial sixty-day period, a claimant may challenge the IRE based on whether the IRE physician meets the qualifications for performing IREs or the manner in which the IRE was performed, *see Verizon Pennsylvania, Inc. v. Workers' Compensation Appeal Board (Ketterer),* .87 A.3d 942, 946–49 (Pa.Cmwlth.) (the claimant challenged the IRE physician's qualifications because the physician did not have the active clinical practice hours required under the Act), *petition for allowance of appeal denied,* 626 Pa. 702, 97 A.3d 746

(2014); *Barrett,* 987 A.2d at 1284–85 (the claimant challenged the methodology used by the IRE physician to determine the claimant's impairment rating); *Stanish v. Workers' Compensation Appeal Board (James J. Anderson Construction Company),* 11 A.3d 569, 575–77 (Pa.Cmwlth.2010) (the claimant challenged the IRE physician's use of the 5th edition of American Medical Association's Guide after the 6th edition had been published), and the description of the work-related injury as it existed *at the time the IRE was performed.* For example, had Dr. Sicilia only addressed one of Claimant's hands, despite the description of Claimant's work-related injuries as involving both hands, the IRE would not have adequately addressed Claimant's accepted work injury and would have been subject to challenge during the sixty-day appeal period.

■ Moreover, given the language of Section 306(a.2) and the goals of the 1996 Amendments, we do not believe that the General Assembly intended to nullify an already performed and otherwise valid IRE by claims of new or additional injuries that were not yet determined to be work-related and, therefore, would not have been addressed by the IRE physician. "The special IRE procedure 'was part of the General Assembly's 1996 reform effort intended to reduce rising Workers' Compensation costs and restore efficiency to the Workers' Compensation system.'" *Diehl,* 972 A.2d at 107 (quoting *Hilyer v. Workers' Compensation Appeal Board (Joseph T. Pastrill, Jr. Logging),* 847 A.2d 232, 235 (Pa.Cmwlth.2004)). To hold, as Claimant requests, that an otherwise valid IRE that addresses the injuries established to be work-related at the time it was performed is invalid because a claimant subsequently proves that additional work-related injuries exist does not advance the reform goals of the 1996 Amendments,

even if filed during the automatic sixty-day appeal period.

■ Claimant's position would not improve the efficiency of the WC system, particularly where, as here, Claimant had been diagnosed with adjustment disorder with depressed mood on August 18, 2010, almost a year *before* the June 2011 IRE was performed, but did not seek to amend the NCP to include that injury until after the results of the IRE. (FOF ¶ 23.) Rather, it encourages claimants to wait to add diagnoses to their work-related injuries until the sixty-day period after an IRE is performed as a way to automatically render the IRE, which is authorized by right in Section 306(a.2), invalid. For example, Employer here requested the IRE within the window provided by Section 306(a.2) that authorizes employer's to issue the self-executing change of disability resulting from an IRE that establishes an impairment rating of less than fifty percent. 77 P.S. § 511.2(1), (2). An employer has only one opportunity under the Act to utilize the self-executing change; if employer requests an IRE beyond that short window, then employer must file a modification petition and litigate the requested change in disability status. *Gardner v. Workers' Compensation Appeal Board (Genesis Health Ventures)*, 585 Pa. 366, 888 A.2d 758, 767–68 (2005). Claimant's position would effectively strip Employer of its only opportunity to obtain a self-executing change in disability status, by adding injuries to the NCP after the IRE is performed and having the IRE declared invalid. The delay in adding injuries as a litigation strategy to defeat an IRE performed under Section 306(a.2) does not serve the purpose of the IRE process or the 1996 Amendments to the Act. In contrast, our conclusion encourages claimants to be proactive as the end of the 104–week period is approaching and determine whether any work-related injuries should be added to the NCP so they are consid-

ered if or when an IRE is requested and performed.

Claimant's position also would not reduce costs of the WC system. The cost of obtaining an IRE would be wasted where previously undisclosed or unaccepted injuries are subsequently asserted to be work-related and Employers may forego the IRE process, meant as a way to contain the costs of the WC system, if the injuries to be evaluated are uncertain until after the process is complete. Either result runs contrary to the General Assembly's intent when it enacted Section 306(a.2).

■ Our conclusion does not foreclose claimants from challenging the change to partial disability status if additional injuries are recognized or adjudicated as being work-related. Pursuant to Section 306(a.2)(4), a claimant can challenge his or her partial disability "at any time during the five hundred-week period of partial disability," 77 P.S. § 511.2(4), " 'if [he] obtains an impairment rating of at least [fifty] percent using the AMA Guides,' " *Wingrove*, 83 A.3d at 276 n. 5 (quoting *Pickford*, 29 A.3d at 129 n. 14). We emphasize that the weekly benefit amount Claimant receives is not reduced as a result of the change from total to partial disability status. *Diehl*, 972 A.2d at 104–05. Thus, while Claimant's benefits are now subject to a five hundred-week maximum period, 77 P.S. § 511.2(7), the amount received as a weekly benefit is not affected by our holding.

## III. Conclusion

For the foregoing reasons, we conclude that an IRE that considers a claimant's work injury, as it is defined and exists at the time the IRE is performed, is valid notwithstanding an after-the-fact expan-

sion of the scope of a claimant's work-related injury. To hold otherwise would be inconsistent with the language of the Act and this Court's precedent, as well as defeat the purpose of the General Assembly's enactment of the IRE process. Accordingly, the Board's Order is affirmed.

Senior Judge JAMES GARDNER COLINS dissents.

**ORDER**

**NOW,** June 26, 2015, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is hereby **AFFIRMED.**